UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LUMINA MATERIALS, LLC,<br>ALEKSEI FEDOROV,<br>TATIANA FEDOROVA,<br><br>Plaintiffs,<br><br>v.<br><br>MARCO RUBIO[1] in his official capacity as<br>US Secretary of State,<br>ROBERT JACHIM in his official capacity as<br>Acting Director of Screening, Analysis and<br>Coordination,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 4:24-cv-00141-SEB-KMB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Lumina Materials, LLC ("Lumina Materials"), Aleksei Fedorov ("Mr. Fedorov"), and Tatiana Fedorova ("Ms. Fedorova")[2] (collectively, "Plaintiffs") brought this action against Defendants Secretary of State Marco Rubio and Acting Director of Screening, Analysis and Coordination Robert Jachim (together, the "Government") in order to compel the adjudication of Mr. Fedorov's principal Category EB-1A and Ms. Fedorova's derivative E-14 immigrant visa applications. Now before the Court is the Government's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12. Dkt. 9. For the reasons explained below, the Government's Motion is **DENIED**.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Marco Rubio automatically became a Defendant in this case when he was sworn in as Secretary of State on January 21, 2025, replacing Secretary of State Antony J. Blinken.

[2] Where appropriate, we shall refer to Mr. Fedorov and Ms. Fedorova jointly as "the Fedorovs."

1

## BACKGROUND

### I.    Statutory Background

The Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101, *et seq.*, governs the admission of noncitizens into the United States. Under the INA, noncitizens seeking permanent residence in the United States and a path to citizenship must obtain an immigrant visa. 8 U.S.C. §§ 1101(a)(15), 1181(a), 1182(a)(7), 1184(a). In this case, Mr. Fedorov is the principal applicant of an employment-related immigrant visa, pursuant to 8 U.S.C. § 1153(b)(2). His spouse, Ms. Fedorova, is a derivative visa applicant, meaning that her admission into the United States depends on the success of Mr. Fedorov's visa application. *See id.* §§ 1151, 1153–54.

Noncitizens seeking admission into the United States bear the burden of establishing their visa eligibility. *Id.* § 1361. To obtain an employment-related immigrant visa, the petitioner must file an I-140 Immigrant Petition for Alien Workers with the United States Citizenship and Immigration Services (the "USCIS"). *Id.* § 1154(a). Following the I-140 application's approval, the petitioner may apply for a visa from the Department of State by submitting a Form DS-260 Application for Immigrant Visa and Alien Registration. *Id.* §§ 1201(a), 1202.

As part of the visa application process, applicants must appear in-person at the appropriate consulate office to execute their applications in the presence of and to attend an interview with a consular officer. *Id.* §§ 1202(e), (h); 22 C.F.R. § 42.62. Thereafter, the consular officer must either issue or refuse the visa. 22 C.F.R. § 42.81(a). Under § 221(g) of the INA, "[n]o visa . . . shall be issued to an alien if . . . it appears to the consular officer,

from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . ." 8 U.S.C. § 1201(g); *e.g.*, 22 C.F.R. § 40.6. "When an immigrant visa is refused, . . . [t]he consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b).

The Foreign Affairs Manual (the "FAM") also outlines a procedure for "quasi-refusal cases," which allows for the deferral of a visa application in circumstances when an advisory opinion or further factfinding is necessary in order to assess a visa applicant's eligibility. Compl. ¶¶ 62, 64 dkt. 1 (citing 9 FAM § 504.11-3(B)(2) (effective June 24, 2021)).[3] Pursuant to this so-called "administrative processing" procedure, the consular officer "must" issue a § 221(g) refusal, though "a final determination is [nonetheless] deferred for additional information . . . ." 9 FAM § 504.11-3(B)(2)(a).

## II.     Factual Averments

We accept as true the factual allegations reflected in the Complaint as well as in the exhibits incorporated therein, drawing all inferences in favor of Plaintiffs, the non-moving party. *Bielanksi v. Cnty of Kane*, 550 F.3d 632, 633 (7th Cir. 2008); Fed. R. Civ. P. 10(c).

---

[3] The Foreign Affairs Manual and associated Handbooks outline the Department of State's structure and operations. Compl. ¶ 18 n.1, dkt. 1. Together, the FAM and its Handbooks convey the policies and procedures by which agency personnel execute and fulfill their legal duties. *Id.* As noted in the Complaint, the pertinent FAM provisions upon which Plaintiffs rely were modified on February 26, 2024. *Id.* ¶ 59; dkt. 1-2 at 1. Unless noted otherwise, we shall cite to the 2021 version of the FAM.

Lumina Materials is a mining and material processing company based in Jefferson-ville, Indiana. Compl. ¶ 2, dkt. 1. Mr. Fedorov is a Russian citizen who specializes in elec-tromechanics. *Id.* ¶ 3.

On November 21, 2022, Mr. Fodorov filed a Form I-140 petition, which the USCIS approved and forwarded to the National Visa Center on December 3, 2022. *Id.* ¶¶ 7–8. On that same day, Lumina Materials offered Mr. Fedorov a full-time position onsite at its Jef-fersonville office, which Mr. Fedorov accepted. *Id.* ¶ 4.

On February 19, 2023, the Fedorovs filed Form DS-260 applications. On March 14, 2023, Mr. Fedorov was found documentarily qualified. Several months thereafter, on De-cember 18, 2023, Mr. Fedorov attended his immigrant visa interview at the U.S. Embassy in Bishkek, Kyrgystan, after which the consular officer informed Mr. Fedorov that his case "would require further administrative processing." *Id.* ¶ 78. Later that day, a consular offi-cial contacted Mr. Fedorov by email and requested additional documentation "[i]n order to continue processing [his] case," dkt. 1-5 at 1, which documentation Mr. Fedorov timely relayed on that same day. Compl. ¶ 79, dkt. 1; dkt. 1-5 at 1–3.

Over the course of the ensuing months, Mr. Fedorov inquired into the status of his visa application on four separate occasions. *Id.* ¶¶ 80–82; dkt. 1-5 at 3–5. Each time, the consulate advised Mr. Fedorov that his "case is still undergoing additional administrative review," which "must be performed before a final decision regarding a visa can be made." Dkt. 1-5 at 3–5. Similarly, the United States Department of State's online application portal shows the status of Mr. Fedorov's and Ms. Fedorova's immigrant visa applications as

"refused for administrative processing," noting that they "will receive another adjudication once such processing is complete." Dkt. 1-4.

Plaintiffs aver that they have each experienced harm as a result of Mr. Fedorov's and Ms. Fedorova's visa applications remaining so long in limbo. Lumina Materials alleges that, due to the Government's delay, it has been "unable to make use of [Mr. Fedorov's] time and talent in the United States," which has harmed its productivity and profitability. Compl. ¶ 88. Mr. Fedorov asserts that he has developed and has been diagnosed with generalized anxiety disorder relating to the uncertainty generated by the Government's inaction and delay. *Id.* ¶¶ 89–94. Ms. Fedorova, likewise, avers that she has been "left in a state of perpetual uncertainty regarding her ability to obtain the visa she seeks and immigrate with her husband to the United States." *Id.* ¶ 95.

### III.    Procedural History

On October 20, 2024, approximately ten months after Mr. Fedorov's visa application was refused for administrative processing, Plaintiffs filed this lawsuit, seeking a court order compelling the Government to promptly adjudicate the Fedorovs's visa applications. Plaintiffs allege three causes of action arising under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 555(b), 706(1)–(2), all of which relate to the Government's alleged unreasonable delay in processing the visa applications. Plaintiffs request a declaration that the Government has unreasonably delayed adjudicating Mr. Fedorov's and Ms. Fedorova's visa applications, in violation of the Immigration and Nationality Act, 8 U.S.C. § 1201, *et seq.*; as well as mandamus and injunctive relief

compelling the Government to timely adjudicate Mr. Fedorov's and Ms. Fedorova's visa applications and enjoining further delay.

On December 23, 2024, the Government moved to dismiss the Complaint. Dkt. 9. Plaintiffs filed a response brief on January 12, 2025, dkt. 11, and the Government replied on January 19, 2025, dkt. 13. The Government's motion is thus fully briefed and ripe for ruling.

**LEGAL STANDARD**

In moving to dismiss the Complaint, the Government invokes Federal Rule of Civil Procedure 12 without identifying the specific subsection(s) upon which it seeks dismissal. The crux of the Government's arguments in support of dismissal is that Plaintiffs' claims necessarily fail as a matter of law. Based on the substance of the Government's arguments as well as the fact that no responsive pleading has been filed, we construe the Government's motion as a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the facial plausibility threshold "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, courts must construe "all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

6

## DISCUSSION

The Government moves to dismiss this action in its entirety on the grounds that: (1) Plaintiffs have failed to identify a clear, nondiscretionary duty requiring the Government to act; (2) the doctrine of consular nonreviewability renders the Complaint nonjusticiable; (3) the alleged delay does not support viable legal claims as a matter of law; and (4) Plaintiffs have failed to allege any "final" agency action to support a claim under § 706(2) of the APA.

We note at the outset that both parties rely predominately on unpublished and/or out-of-circuit caselaw to develop their legal arguments. Our own research has revealed a lack of binding legal authority on the issues raised in this case. Although the authorities cited herein are not necessarily binding, they provide persuasive guidance on matters of first impression in this circuit. *See Liberty Mut. Fire Ins. Co. v. Clayton*, 33 F.4th 442, 449 (7th Cir. 2022) (stating that district courts "may look to out of circuit precedent as persuasive authority" where controlling precedent is absent).

## I.    The Existence of a Nondiscretionary Duty

Claims arising out of an agency's unreasonable delay, such as those asserted here, may proceed under either the Mandamus Act or the APA. *See* 28 U.S.C. § 1361 (authorizing district courts to compel "any agency . . . to perform a duty owed to the plaintiff"); 5 U.S.C.

7

§ 706(1) (granting the reviewing court authority to "compel agency action unlawfully with-held or unreasonably delayed"). Here, Plaintiffs have asserted claims under both statutes.[4]

Under the Mandamus Act, district courts have the power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002)). Similarly, the APA provides that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Pursuant to the APA, district courts are authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Thus, whether proceeding under the Mandamus Act or the APA, a plaintiff must identify "a discrete agency action" that the agency in question is required and has failed to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *Calderon-Ramirez*, 877 F.3d at 275–76. The authority under either statute "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act[ ]' . . .

---

[4] Several courts, including some within this circuit, have found that "where relief sought via mandamus is duplicative of that sought under the APA, the court must dismiss the petition for writ of mandamus." *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 908 (N.D. Ill. 2024) (collecting cases).

without directing *how* it shall act." *Norton*, 542 U.S. at 63 (quoting Att'y Gen.'s Manual on the Admin. Proc. Act 108 (1947)).

In this case, all parties agree that, once "a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and its implementing regulations, the consular officer must either issue or refuse the visa under [§ 212(a) or § 221(g)] or other applicable law." 22 C.F.R. § 42.81(a); *e.g.*, dkt. 10 at 7; dkt. 11 at 23. Section 221(g) provides, in pertinent part, that "[n]o visa . . . shall be issued to an alien if . . . it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . ." 8 U.S.C § 1201(g). The parties also agree that, when a visa application is refused, the consular officer "shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b). At the pleading stage, we find that that this statutory and regulatory scheme establishes the Government's duty to process the Fedorovs's visa applications, which duty comprises the basis of cognizable Mandamus Act and APA claims.[5] *See Calderon-Ramirez*, 877 F.3d at 275–76.

The disagreement between the parties emanates from their competing characterizations of the facts alleged in this case. The Government, on the one hand, contends that the Fedorovs's visa applications have been "refused" under § 221(g), meaning that the Government has discharged the entirety of its legal duty owed to Plaintiffs and that dismissal

---

[5] Because we conclude that Plaintiffs have sufficiently pleaded a nondiscretionary duty, we do not discuss the additional authorities cited by Plaintiffs.

is therefore appropriate. Because the Government has no legal duty to engage in "additional discretionary post-refusal administrative processing," the Government continues, Plaintiffs cannot compel "*another* decision on their visa applications." Dkt. 13 at 2 (emphasis added). According to the Government, Plaintiffs in fact have no legal recourse whatsoever in circumstances such as those alleged here involving a § 221(g) refusal followed by "discretionary post-refusal administrative processing." *Id.* at 2–3.

According to Plaintiffs, by contrast, an INA § 221(g) refusal for administrative processing is a non-final maneuver that does not dispense the Government's non-discretionary duty to finally adjudicate immigrant visa applications. Dkt. 11 at 17–18. Plaintiffs point to the Government's repeated assurances to Mr. Fedorov that his "case is still undergoing additional administrative review," which "must be performed before a *final* decision . . . can be made," dkt. 1-5 at 3 (emphasis added), as belying the Government's efforts to recast the § 221(g) refusals as "final." Additionally, Plaintiffs aver that § 555(b) of the APA requires the Government to complete such final adjudication within a reasonable time. Compl. ¶¶ 54–57, 61–65, dkt. 1.

The Government relies upon the D.C. Circuit's unpublished opinion in *Karimova v. Abate*, affirming the dismissal of an immigrant visa applicant's lawsuit seeking to compel a consular officer to finally adjudicate her visa application after placing it in administrative processing. No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024). In that case, the petitioner's visa application had been "officially refused . . . , though the consular officer chose to leave it in administrative processing in case something change[d] in [her] eligibility." *Id.* at *2 (citation modified). A year later, the petitioner filed suit in federal court

alleging that the consular officer had breached the duty to render a final decision on the visa application within a reasonable time. *Id.* The D.C. Circuit rejected the petitioner's legal theory, reasoning that "[n]othing in federal law speaks to the ability of a consul, after making [a] decision" to either grant or refuse a visa, "to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." *Id.* at *4.

The holding in *Karimova* is unpersuasive here for several reasons. First, as an unpublished out-of-circuit decision, the case's persuasive value is limited, and, notably, district courts within the D.C. Circuit have declined to adhere to it. *See, e.g.*, *Al Saedi v. LeBailly*, No. CV 24-1401 (LLA), 2025 WL 485410, at *3 n.6 (D.D.C. Feb. 13, 2025); *see also Karbasian v. U.S. Dep't of State*, No. 24-CV-1484-RJD, 2025 WL 821597, at *7 (S.D. Ill. Mar. 14, 2025) (noting the same). Second, the factual allegations in our case are distinguishable. In *Karimova*, the petitioner conceded that she had received an "official refusal" of her visa application, notwithstanding the allegation that the consular officer opted "to hold onto the application in case circumstances later changed in the [petitioner's] favor." *Karimova*, 2024 WL 3517852, at *2, *4. Although the visa applications in this case were similarly "refused for administrative processing," Plaintiffs have identified multiple consular communications from which we can plausibly infer that the Fedorovs's visa applications still await final adjudication. For example, following his interview on December 18, 2023, Mr. Fedorov received an email requesting additional documentation that was necessary "[i]n order to *continue* processing [his] case." Dkt. 1-5 at 1 (emphasis added). Two months later, the consul informed Mr. Fedorov that his "case [wa]s still undergoing

11

additional administrative review, which "must be performed *before a final decision* regarding a visa can be made." *Id.* at 3 (emphasis added); *e.g.*, *id.* at 4–5. Further buttressing Plaintiffs' theory is that the Department of State's online application portal explicitly states that Mr. Fedorov and his spouse "*will* receive another adjudication once such [administrative] processing is complete." Dkt. 1-4.

Unlike the *Korimova* petitioner whose application remained in administrative processing "in case" her eligibility changed, Plaintiffs here (Mr. Fedorov, namely) have received repeated assurances that a "final" decision is forthcoming. Accordingly, we conclude that Plaintiffs have plausibly alleged that the Government has not discharged its legal duty to resolve their visa applications in a timely fashion, as federal law requires.

## II.      The Doctrine of Consular Nonreviewability

"Congress has delegated the power to determine who may enter the country to the Executive branch, and courts generally have no authority to second-guess the Executive's decisions." *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019) (citation modified). In accordance with this well-established legal principle, the doctrine of consular nonreviewability recognizes that the INA "does not authorize judicial review of a consular officer's denial of a visa," meaning that, "as a rule, the federal courts cannot review those decisions." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024). The doctrine of consular nonreviewability is not jurisidictional, however. *Id.* at 908 n.4 (citing *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018)).

Here, the Government argues that the doctrine of consular nonreviewability bars Plaintiffs from challenging the INA § 221(g) refusals and renders their claims non-

12

justiciable. Dkt. 10 at 9–11. Plaintiffs concede that a consular officer's final decision is "normally" nonreviewable but contend that the doctrine of consular nonreviewability does not apply because no *final* decision has been rendered.

In cases where, as here, a § 221(g) refusal "is followed by assurances of further adjudication," courts in this circuit and elsewhere "have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply." *Ebrahimi*, 732 F. Supp. 3d at 906–07 & n.6–n.7 (collecting cases); *e.g.*, *Vang v. Franceschi*, No. 24-CV-609, 2024 WL 4370855, at *6 (E.D. Wis. Oct. 2, 2024). As discussed above, Plaintiffs have plausibly alleged that the "refusal" of their visa applications "for administrative processing" does not constitute a final agency adjudication, particularly in light of the Government's repeated indications to Mr. Fedorov that a "final decision" had not yet been rendered. Under these circumstances, we join the consensus among district courts in holding that the doctrine of consular nonreviewability does not foreclose the claims asserted by Plaintiffs here, involving an alleged nonfinal disposition of their visa applications.

## III.   Failure to Allege an Unreasonable Delay

The Government's final argument is that Plaintiffs' allegations are legally insufficient to state a plausible claim for unreasonable delay for purposes of §§ 555(b) and 706(1) of the APA. Dkt. 10 at 11. To assess whether an agency has engaged in unreasonable delay, district courts within this Circuit utilize a six-factor test set forth by the D.C. Circuit Court of Appeals in *Telecommunications Research & Action Center v. F.C.C.*, pursuant to which the following considerations bear on claims of agency delay:

(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.' "

750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (citation modified). *See also Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions.").

Although both parties agree that the *TRAC* factors supply the applicable legal standard, Plaintiffs nonetheless contend that the *TRAC* assessment must await further factual development due to the fact-specific nature of its various elements. Dkt. 11 at 33–34. Plaintiffs' position, however, "is out of step with the majority approach currently taken by courts both inside and outside this district." *Ebrahimi*, 732 F. Supp. 3d at 910 (collecting cases). At the motion to dismiss stage, courts routinely apply the *TRAC* factors in evaluating the legal sufficiency of immigration plaintiffs' factual averments. *Patel v. Noem*, 788 F. Supp. 3d 950, 957 (N.D. Ill. 2025); *Romero v. Scott*, No. 24-CV-4372, 2025 WL 815071, at *4 (N.D. Ill. Mar. 12, 2025). We therefore reject Plaintiffs' contention to the contrary and will proceed with our analysis below. In applying the *TRAC* factors to the instant complaint, we determine only whether Plaintiffs' allegations sufficiently state a plausible claim for unreasonable administrative delay.

The relevant underlying facts, as alleged in the Complaint, reflect as follows: On February 19, 2023, Mr. Fedorov and Ms. Fedorova filed Form DS-260 applications. Approximately eight months later, on December 18, 2023, Mr. Fedorov attended an in-person interview at the U.S. Embassy in Kyrgystan, after which the consular officer informed Mr. Fedorov that his application required additional administrative processing. Compl. ¶ 78, dkt. 1. After ten months without further notice of the agency's progress on the Fedorovs's visa applications, Plaintiffs initiated this lawsuit on October 20, 2024. As of the date of this Order, approximately twenty-seven months have elapsed since Mr. Fedorov's and Ms. Fedorova's visa applications were placed in administrative processing.[6]

## A.    The First & Second *TRAC* Factors

The first and second *TRAC* factors focus on (1) whether the agency's decisionmaking timeline is governed by a "rule of reason" and (2) whether Congress has indicated the speed at which it expects the agency to proceed. *TRAC*, 750 F.2d at 80. The first factor is regarded as the "most important," *In re Core Commc'ns, Inc.*, 531 F.3d 849 (D.C. Cir. 2008), though it is often evaluated in conjunction with the second factor, as both considerations inform whether "sufficient rhyme and reason" explains the Government's response time, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.C.C. 2021).

---

[6] The parties use different starting dates to calculate the duration of the alleged delay. The Government relies on December 18, 2023 (the date that Mr. Fedorov's and Ms. Fedorova's visa applications were refused for administrative processing), dkt. 13 at 9, while Plaintiffs cite February 19, 2023 (the date that Mr. Fedorov and Ms. Fedorova submitted their Form DS-260 applications), dkt. 11 at 36, 38; Compl. ¶ 11, dkt. 1. For purposes of this order, we regard December 18, 2023, as the operative starting point, since that date reflects the latest agency action and marks the onset of the alleged delay. This approach, moreover, aligns with that taken by the majority of district courts. *See, e.g., Ebrahimi*, 732 F. Supp. 3d at 911.

Here, the Government has not identified a rule of reason by which the agency abides to process immigrant visa applications that have been placed in administrative processing, though it defers generally to executive agencies' "wide discretion in the area of immigration processing." Dkt. 10 at 13 (citation omitted). Plaintiffs, for their part, allege that the "administrative processing" regime lacks any identifiable rule of reason. Based on the Declaration of former Acting Director of the Office of Screening, Analysis and Coordination Carson Wu ("Former Acting Director Wu"), which is attached to and referenced in the Complaint, Plaintiffs maintain that the Government does not review visa applications on a first-in-first-out basis. *See* Wu Decl. ¶ 27, dkt. 1-3. While we credit the expansive discretion afforded to the Government in processing immigrant visa applications, it remains unclear to us whether an articulable "rule of reason" guides the Government's decisionmaking, since the Government has neither identified such a principle nor responded to Plaintiffs' reliance upon Former Acting Director Wu's Declaration.

Turning to the second factor, we assess whether Congress has prescribed specific deadlines for the Department of State to resolve visa applications that pend in administrative processing. Plaintiffs point to three authorities, which they contend establish a congressional timetable. First, in their Complaint, Plaintiffs cite the Consolidated Appropriations Act as providing that the Department of State is "required to process immediate relative immigrant visas 'within 30 days of the receipt of the necessary information . . . ' and all other family-based immigrant visas 'within 60 days . . . .' " Compl. ¶ 139, dkt. 1 (quoting Pub. L. No. 106-113, § 237(a), 113 Stat. 1501 (1999)). Plaintiffs' quotation, however, omits key portions of § 237 revealing that it expresses a mere policy preference—not a

16

mandatory statutory deadline. *See* Pub. L. No. 106-113, § 237(a) ("It shall be the policy . . . ."); *id.* ("[I]t should be the policy . . . ."). The Consolidated Appropriations Act, therefore, neither plausibly nor persuasively establishes the existence of a congressional timetable.

Plaintiffs' second cited authority is 8 U.S.C § 1571(b), which provides: "It is the sense of Congress that the processing of an immigration benefit application should be completed no later than 180 days after the initial filing of the application . . . ." 8 U.S.C § 1571(b). In light of § 1571(b)'s (precatory) language describing the processing of immigrant *benefit* applications by the United States Citizenship and Immigration Services—not immigrant visa applications processed by the Department of State—we are not persuaded that § 1571(b) plausibly indicates the speed at which Congress contemplated that the Department of State would process immigrant visa applications.

Third and finally, Plaintiffs cite, albeit without further explanation, 22 C.F.R. § 41.121(c), which states that "[i]f the ground(s) of ineligibility may be overcome by the presentation of additional evidence . . . , a review of the refusal may be deferred for not more than 120 days." 22 C.F.R. § 41.121(c). This provision, however, pertains to *non*immigrant visas and is thus similarly unhelpful to Plaintiffs' cause.

In the absence of a congressionally-mandated timeline, courts turn to caselaw for guidance. *See Ebrahimi*, 732 F. Supp. 3d at 911. Although "no bright lines have been drawn in this context, courts have generally found that immigration delays in excess of five years are unreasonable, while those between three and five years are often not unreasonable." *Id.* (citation modified). District courts typically regard "the two-year mark to be the lowest threshold for a finding of unreasonable delay in visa processing cases." *Id.* (citation

17

modified). Courts in this circuit have most recently found that a 12-month wait "is so relatively short that it . . . 'counsels heavily against finding the delay unreasonable.' " *Ebrahimi*, 732 F. Supp. 3d at 911 (quoting *Orozco v. Blinken*, No. 22 C 5134, 2023 WL 4595377, at *4 (N.D. Ill. July 18, 2023)) (citation modified).

As outlined above, Mr. Fedorov's and Ms. Fedorova's visa applications have pended in administrative processing for nearly twenty-seven months, barely surpassing the minimum two-year threshold. Although a two-year-long delay is not egregiously unreasonable, we find that the twenty-seven-month delay in the final adjudication of the Fedorovs's visa applications is sufficiently substantial to support their claims in this action.

## B.    The Third & Fifth *TRAC* Factors

Turning to the third and fifth *TRAC* factors, respectively, we consider whether human health and welfare are at stake as well as the nature and extent of the interests prejudiced by the agency's delay. *TRAC*, 750 F.2d at 80. Here, Lumina Materials avers that its "productivity and profitability" have been harmed by its inability to benefit from Mr. Fedorov's expertise. Compl. ¶ 88, dkt. 1. Mr. Fedorov alleges that uncertainty regarding his visa application has hindered his career progress and has caused him to develop a generalized anxiety disorder. *Id.* ¶¶ 89–94. Ms. Fedorova likewise alleges that the "perpetual uncertainty" has caused her emotional and psychological harm. *Id.* ¶ 95.

Although the Government does not challenge the legitimacy of Plaintiffs' alleged injuries, it contends that "their circumstances are not unique" and that compelling agency action to Plaintiffs' benefit may "prejudice . . . other similarly situated foreign nationals with visa applications." Dkt. 10 at 13.

Delay that jeopardizes human health and wellbeing are regarded as "less tolerable than a delay implicating purely economic interests." *Ebrahimi*, 732 F. Supp. 3d at 912 (citation modified). Relatedly, the Seventh Circuit has recognized that visa applicants' health and welfare must be evaluated alongside other similarly-situated persons. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275–76 (7th Cir. 2017) (affirming dismissal of immigration-related mandamus claim where applicant had "fail[ed] to set forth any facts that differentiate[d] him from other petitioners" and "suggest[ed] [that] his wait time ha[d] been any more unreasonable than other petitioners waiting in the same line . . . "). Courts often conclude that the third and fifth *TRAC* factors weigh in petitioners' favors when, for instance, "the delays have separated married couples, prevented children from reuniting with their parents, or delayed educational and child-rearing plans." *Orozco*, 2023 WL 4595377, at *5 (citation modified) (collecting cases).

Applying these legal principles to the complaint at bar, we conclude that the third and fifth factors weigh in the Government's favor. Lumina Materials's productivity and profitability implicate financial interests that, in and of themselves, do not render the near two-year delay in this case unreasonable. Although we are sympathetic to the Fedorovs's predicament, their alleged psychological hardships are not unlike those experienced by similarly-situated visa applicants. *See Vang*, 2024 WL 4370855, at *11. Accordingly, the third and fifth *TRAC* factors weigh in the Government's favor.

### C.    The Fourth *TRAC* Factor

Under the fourth factor, we evaluate "the effect of expediting delayed action on agency activities of a higher or competing priority . . . ." *TRAC*, 750 F.2d at 80. The fourth

factor often weighs in favor of the Government where compelling an adjudication might prejudice others who, like Plaintiffs here, await final decisions on their visa applications. *See Calderon-Ramirez*, 877 F.3d at 276 (affirming dismissal of mandamus claim where "nothing in the record" suggested that the petitioner's "wait time ha[d] been any more unreasonable than other petitions waiting in the same line").

This factor, the Government argues, is "especially troublesome" for Plaintiffs, who, from the Government's view, "appear only to seek to jump ahead of those without the capacity to sue." Dkt. 10 at 13 (citation modified). The Government contends that a court-ordered adjudication of the Fedorovs's visa applications "would force a reordering of competing State Department priorities," making it a "zero-sum game." Dkt. 13 at 10. Plaintiffs rejoin that the Government has failed to refute their allegation, based on the Declaration of Former Acting Director Wu, that no "first-in-first-out" system is utilized in processing visa applications. Therefore, by Plaintiffs' reasoning, there is no basis on which to infer that an order compelling the final resolution of the Fedorovs's applications would necessarily disrupt any existing queue.

We agree with Plaintiffs that the lack of evidence revealing *how* the Government processes visa applications (once they have been placed in administrative processing) precludes any meaningful assessment of this fourth factor. Based on Plaintiffs' factual averments, which we must accept at the pleading stage, the Government does not process applications according to a "first-in-first-out" (nor any other discernable) methodology, which undermines the Government's contention that Plaintiffs' success in this lawsuit would necessarily prejudice other similarly-situated petitioners. *See Vang*, 2024 WL 4370855, at *11.

20

**D.     The Sixth *TRAC* Factor**

The sixth factor concerns whether "any impropriety lurk[s] behind" the Government's alleged inaction. *TRAC*, 750 F.2d at 80. In this case, Plaintiffs do not allege bad faith. Accordingly, the sixth factor contributes little to our assessment. *See Ebrahimi*, 732 F. Supp. 3d at 913; *Orozco*, 2023 WL 4595377, at *6.

Weighing the *TRAC* factors altogether, we hold that Plaintiffs have alleged sufficient facts, albeit barely, to plausibly state a claim for unreasonable agency delay. Notwithstanding the absence of compelling averments relating to the third and fifth *TRAC* factors (i.e., risks to human health and welfare; and the nature and extent of the interests prejudiced by the agency's delay), we find that the approximate twenty-seven-month delay, coupled with the lack of known facts concerning the agency's "administrative processing" procedures and their effects on other governmental priorities plausibly supports an inference of unreasonable delay. At the very least, further discovery "is warranted to better assess the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022) (reversing dismissal of U-visa applicants' unreasonable-delay action).

**IV.     Failure to State a Claim under § 706(2) of the APA**

Under § 706(2) of the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). Judicial review pursuant to § 706(2) is limited to "final

agency action for which there is no other adequate remedy in a court." *Id.* § 704. The Supreme Court has established a two-part test for determining whether an agency's action is "final": "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation modified).

Here, the Government challenges whether Plaintiffs have adequately alleged that the agency's decision was "final" for purposes of § 706(2). The Government contends that Plaintiffs' entire "theory of the case rests on the idea that the only agency action here . . . [is] *not* final." Dkt. 10 at 14 (emphasis added). Plaintiffs rejoin that the placement of the Fedorovs's visa applications into indefinite administrative processing "serves as a *de facto* denial of [their] applications" that circumvents the agency's obligation to disclose the grounds for denial. Dkt. 11 at 29. In Plaintiffs' view, the Government has "consummated [its] decisionmaking process by unlawfully subjecting Plaintiffs' applications to permanent administrative processing," which has thwarted the Fedorovs's efforts to obtain visas and to enter the United States lawfully. *Id.* at 14–15. The Government's reply brief does not respond to Plaintiffs' arguments.

Federal Rule of Civil Procedure 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Likewise, "the federal rules are devoid of any requirement that a complaint set forth a legal theory or cite to a specific statute in order to put the Defendant on notice of the claims against it." *Jackson v.*

*Sec'y of Indiana Fam. & Soc. Servs. Admin.*, 279 F. Supp. 3d 816, 818 (S.D. Ind. 2016); *e.g.*, *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").

Applying these legal principles to the complaint at bar, we reject the Government's contention that dismissal is warranted by virtue of the apparent inconsistency between Plaintiffs' averments relating their §§ 706(1) (unreasonable delay) and 706(2) (arbitrary and capricious) claims. In light of the Government's failure to respond (in its reply brief) to Plaintiffs' arguments in support of their § 706(2) claims as well as the parties' competing contentions regarding the finality of the Fedorovs's visa refusals, we are not prepared to foreclose the possibility of relief under § 706(2) at this preliminary stage. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The Government's request for dismissal shall be denied accordingly.

## CONCLUSION

For these reasons, the Government's Motion to Dismiss is hereby **DENIED**. Dkt. 9. This matter shall proceed accordingly.

IT IS SO ORDERED.

Date:

_____3/13/2026_____

_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

23

Distribution:

Curtis Lee Morrison
Red Eagle Law, L.C.
curtis@redeaglelaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov